FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ OCT 25 2011 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOSEPH S. BARBAGALLO,<br><br>               Plaintiff,<br><br>– against –<br><br>MARCUM LLP, JOHN DOES 1-9,<br><br>               Defendants. | **MEMORANDUM<br>AND ORDER**<br><br>11-CV-1358 |

MARCUM LLP,

         on Counterclaims, and as
         Third-Party Plaintiff,

        – against –

JOSEPH S. BARBAGALLO,
         on Counterclaims, and

CITRIN COOPERMAN & COMPANY, LLP,
         as Third-Party Defendant

**Appearances:**

For plaintiff:                            Alan S. Fellheimer
                                         Fellheimer & Eichen, LLP
                                         45 Rockefeller Plaza
                                       Suite 2000
                                       New York, NY 10111

For defendant:                         John Houston Pope
                                         Epstein Becker & Green, P.C.
                                         250 Park Ave.
                                       New York, NY 10177-1211

                         Raymond T. Mak
                         Epstein Becker & Green PC
                         250 Park Avenue
                         New York, NY 10177

1

Kevin Richard Brady
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

For third-party defendant:         John K Crossman
                                   Zukerman Gore & Brandeis LLP
                                   875 Third Avenue
                                   New York, NY 10017

                                   Frank Christian Welzer
                                   Zuckerman Gore & Brandeis LLP
                                   11 Times Square
                                   New York, NY 10036

**JACK B. WEINSTEIN, Senior United States District Judge:**

I.    Introduction .................................................................................................... 3
II.   Facts and Claims ............................................................................................. 4
   A.   Parties .................................................................................................... 4
   B.   Jurisdiction and Choice of Law............................................................. 5
   C.   Terms of Employment Contract ............................................................ 6
   D.   Alleged Violations of Employment Contract........................................ 7
III.  Legal Standard ................................................................................................ 9
IV.   Barbagallo's Motion to Dismiss Marcum's Claims........................................ 9
   A.   Reformation of Contract........................................................................ 9
   B.   Gross Negligence ................................................................................ 11
   C.   Unjust Enrichment............................................................................... 14
   D.   Marcum's Other Counterclaims Against Barbagallo .......................... 15
V.    Citrin's Motion to Dismiss Marcum's Claims.............................................. 15
   A.   Tortious Interference with Contract .................................................... 16
   B.   Aiding and Abetting Breach of Fiduciary Duty .................................. 18
   C.   Unfair Competition .............................................................................. 20
   D.   Unjust Enrichment............................................................................... 22
VI.   Equitable and Legal Issues............................................................................ 25

2

VII.    Enforceability of the Non-Compete Clause ........................................................ 26
VIII.   Barbagallo's Remaining Claims........................................................................ 28
IX.   Conclusion ........................................................................................................ 29

## I.    Introduction

Joseph Barbagallo, a certified public accountant; his former employer, Marcum LLP

("Marcum"); and his new employer, Citrin Cooperman & Co. ("Citrin") are engaged in this

complex legal dispute about the propriety of the acts of all three in the job switching.  They bring

motions pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and for other relief.

Barbagallo sues Marcum for wrongfully withholding payment of retirement and other

benefits, claiming violations of both federal and state law.  Compl. 1, Doc. Entry 1, Mar. 18,

2011 ("Compl.").  He also seeks a declaratory judgment that he is the owner of a particular

telephone number.  Compl. ¶ 104-05.

Marcum contends that Barbagallo failed to retire with notice as required under his

employment agreement and is therefore ineligible for retirement benefits.  *See* Amended Ans.,

Counterclaims, and Third-Party Compl., Doc. Entry 36, Sept. 22, 2011.  It seeks reformation of

the employment contract and brings counterclaims against Barbagallo for violating a non-

compete clause as well as for breach of a fiduciary duty not to steal its clients and confidential

information.  Marcum also brings third-party claims against Barbagallo's current employer,

Citrin for assisting Barbagallo in his tortious acts.  *See id.*

Barbagallo moves to dismiss Marcum's counterclaims for: (1) reformation of the

contract, (2) gross negligence, (3) unjust enrichment, and (4) punitive damages.

Citrin moves to dismiss Marcum's claims for: (1) tortious interference with the contract; (2) aiding and abetting breach of fiduciary duties; (3) unfair competition; and (4) unjust enrichment.

The unjust enrichment and punitive damages claims against Citrin and Barbagallo are dismissed. To the extent that Marcum's gross negligence claim is based on Barbagallo's alleged malpractice, this claim is also dismissed. Barbagallo's unjust enrichment claims are also dismissed. In the absence of a stipulation for jury waiver, remaining claims shall be tried by the court in part and by a jury in part (sitting on some claims in an advisory capacity). *See* Part IX, *infra*.

## II.    Facts and Claims

### A.    Parties

Marcum is an accounting firm with its principle place of business in Melville, New York. *See* Compl. ¶ 2. As one of the nation's largest accounting firms, it employs "more than 1,100 professionals, including more than 150 partners, in 23 offices throughout New York, New Jersey, Massachusetts, Connecticut, Pennsylvania, California, Florida, Grand Cayman, China and Hong Kong." *Fact Sheet,* Marcum LLP, http://www.marcumllp.com/firmprofile/factsheet (last visited Oct. 24, 2011). Citrin is a New York City-based accounting firm that competes directly with Marcum in the New York City and Philadelphia metropolitan areas. *See* Amended Ans. ¶ 140. It employs over 160 accountants. *See People*, Citrin Cooperman, http://www.citrincooperman.com/people/ (last visited Oct. 24, 2011).

Barbagallo, a Pennsylvania resident, is a certified public accountant. *See* Compl. ¶ 1. In March 2003, he entered into an employment contract with Margolis & Company P.C. ("Margolis"), a Pennsylvania accounting firm. Amended Ans. ¶ 125. One of his roles was to

4

"assist the [c]ompany in securing new clients and in developing the [c]ompany's practice" in Pennsylvania. Ans. Ex. A 1-2.

Marcum purchased the assets of Margolis in September 2009; the merger left Marcum as the surviving entity. Compl. ¶ 34; Amended Ans. ¶ 126. Barbagallo then entered into a non-equity partner agreement with Marcum. Amended Ans. ¶ 127; Compl. Ex. 1 ("Contract"). This Contract superseded the prior agreement with Margolis. Embodied in the Contract is the Marcum Employee Handbook. Contract Sec. 1.2. It is this new Contract that is central to the dispute.

### B. Jurisdiction and Choice of Law

The Contract calls for jurisdiction and venue in New York federal and state courts. *See* Contract Sec. 21.1. The court has subject matter jurisdiction over Barbagallo's claims for retirement benefits under the Employee Retirement Income Security Act (ERISA), Pub. L. No. 93-406, 88 Stat. 829 (codified as amended in scattered sections of 5 U.S.C., 18 U.S.C., 26 U.S.C., 29 U.S.C., and 42 U.S.C.). It exercises supplemental jurisdiction over both Barbagallo's and Marcum's state law claims. 28 U.S.C. § 1367(c)(3).

Even if Barbagallo's retirement benefits are not covered by ERISA, this court had diversity jurisdiction over the matter. *See* 28 U.S.C. § 1332. Barbagallo resides in Pennsylvania; Marcum's principal place of business is in New York. Each claims over $75,000 in damages. *See* Tr. of Motion to Dismiss Hr'g, Oct. 25, 2011. The court may exercise supplemental jurisdiction over Marcum's third-party complaint against Citrin, even though Citrin is non-diverse. *World Trade Center Properties, L.L.C. v. Hartford Fire Ins. Co.*, 345 F.3d 154, 163 (2d Cir. 2003), *abrogated on other grounds by Wachovia Bank v. Schmidt*, 546 U.S. 303 (2006).

.

5

In deciding the state law claims, New York law will be applied. The Contract requires that the agreement be construed and enforced under New York law. Contract Sec. 21.1(a). Although the parties have not addressed what law should be applied to the tort claims raised, they have assumed in their papers that New York law would govern these claims as well. "[S]uch implied consent is . . . sufficient to establish the applicable choice of law." *Golden Pacific Bancorp v. F.D.I.C.*, 273 F.3d 509, 513 n.4 (2d Cir. 2001).

### C. Terms of Employment Contract

The contract consists of twenty-three single-spaced pages covering in great detail the terms of employment. Barbagallo's compensation is substantial: $183,625 per year plus bonuses, large expense accounts, and large retirement payments for ten years. *See, e.g.,* Sec. 8.1, 9.1, 10.1. It was obviously prepared—with imput by the new employee—by the employer, a large firm with both partners and non-equity partner accountants. Almost every conceivable issue is covered by the Contract and Employee's Handbook issued by Marcum.

Among other terms, the Contract bound Barbagallo to: (1) "devote his exclusive time and efforts to Marcum Business", Contract Sec. 6.1; (2) provide twelve months notice of intent to retire, *id.* at Sec. 10.3; (3) provide ninety days notice before terminating his employment and continue to perform his responsibilities during this notice period, *id.* at Sec. 14.1; (4) not divulge any of Marcum's trade secrets or confidential business information during and after his employment with Marcum, *id.* at Sec. 12.1(a-b); (5) not provide services in the same capacity to any of Marcum's clients, unless as an employee of the client, after termination of employment with Marcum, *id.* at Sec. 12.1(c); (6) not engage in business under the name of "Margolis" after termination of employment except as subject to "unwind" provisions, *id.* at Sec. 12.1(d); and (7)

6

compensate Marcum for any clients that leave Marcum and continue their relationship with plaintiff upon termination of his employment at Marcum, *id.* at Sec. 13.1. The parties agree that the non-compete clause did not violate public policy. *Id.* Sec. 12.1; *see infra* Part VII for further discussion.

Barbagallo agreed to be bound by Marcum's Philadelphia Office Employee Handbook. Contract Sec. 1.2(a); Compl. Ex. 4 ("Handbook"). It provides, in relevant part, that employees are eligible for client referral bonuses of either five or ten percent of the fees collected, as determined by whether the employee works on the account or not. Handbook 23.

Marcum alleges that Citrin was aware of Barbagallo's contractual obligations not to solicit Marcum's clients or use Marcum's good will. Amended Ans. ¶ 199.

### D. Alleged Violations of Employment Contract

Marcum claims that Barbagallo failed to competently provide accounting services while employed by the company: he made numerous improper write-offs of receivable balances; billed clients for unauthorized work; failed to open correspondence from clients and taxing agencies; and claimed new client commissions of ten percent rather than the five percent to which he was entitled. Answer ¶ 135-139. One client allegedly made cash payments to Barbagallo that were never remitted to Marcum. *Id.* at ¶ 138.

In the summer of 2010, Citrin and plaintiff allegedly engaged in discussions about potential employment. Amended Ans. ¶ 141. In the course of these conversations, Barbagallo is claimed to have transferred Marcum's confidential client information to Citrin. On July 19, 2010, Barbagallo emailed a confidential Marcum client list with billing information to Gary Karlitz, a Citrin employee. *Id.* ¶ 141(a). On July 26, 2010, he sent client lists and spreadsheets

7

with confidential or proprietary information to his own personal external email address. *Id.* ¶
146(c).

Barbagallo gave Marcum written notice of his intent to terminate his employment on July
23, 2010. *Id.* ¶ 146(a). At the time, he told Marcum that he was going to an in-house position.
*Id.* ¶ 146(b). On August 2, 2010, Barbagallo received an email from Joel A. Cooperman, a
partner at Citrin, saying that Barbagallo's signed employment contract with his new employer
was received. *Id.* ¶ 141(d).

Citrin also allegedly encouraged Barbagallo to entice Edward Glinski, another Marcum
employee, to join Citrin. *Id.* ¶ 142. Emails entitled "Barbagallo's Team" were exchanged
between Barbagallo and Citrin. *Id.* On August 16, 2010, Citrin sent Barbagallo an offer letter it
had prepared for Glinski, asking for his approval. *Id.* ¶ 143. In August 2010, Glinski resigned
and joined Citrin. *Id.* ¶ 144.

On October 22, 2010, Barbagallo received an email to his Marcum address from a client
who informed him that he was being billed for Barbagallo's tax services by Citrin, a firm
unknown to the client. Answer ¶ 147.

Barbagallo's employment with Marcum ended on October 31, 2010, after the ninety day
notice period. *Id.* ¶ 147. Since his departure, Barbagallo's clients at Marcum have contacted
Citrin seeking Barbagallo's accounting services. *Id.* ¶ 154-55.

In November 2010, Barbagallo and Citrin received a letter from Marcum alleging a
violation of the Contract's covenant not to compete. *Id.* ¶ 151. It requested that Barbagallo
cease his employment with Citrin and provide an accounting of services delivered to Marcum's
clients. *Id.* Ex. B. This was followed by a December 2010 letter alleging that Barbagallo
violated the terms of the Contract by diverting Marcum's clients to Citrin. *Id.* ¶ 153. It also

8

declared that Barbagallo was not entitled to any further compensation for unused vacation days, new business commissions, and retirement benefits. *Id.* Ex. C.

## III.   Legal Standard

Rule 12(b)(6) allows dismissal of claims when the pleadings fail "to state a claim upon which relief can be granted." While plaintiffs are not required to put forward "detailed factual allegations," a pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic v. Twombly,* 550 U.S. 544, 555 (2006). In ruling on a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). A claim thus survives a motion to dismiss if it is "plausible on its face." *Twombly*, 550 U.S. at 570.

## IV.   Barbagallo's Motion to Dismiss Marcum's Claims

### A. Reformation of Contract

Marcum claims that Barbagallo's employment contract should be reformed because, due to a scrivener's error, it failed to accurately record the bargain. The contract provides:

> In the event that the Non-Equity Partner withdraws voluntarily from Marcum or is involuntarily terminated by Marcum during the term of this Agreement he *shall be entitled* to the Retirement Earnings Benefit as provided for in this Agreement.

Contract § 15.1 (emphasis added). Marcum states that the parties' original intent was that this provision read "shall not be" rather than "shall be." Amended Ans. ¶ 189-90. The word "not" was allegedly omitted due to a typographical error. *Id.* ¶ 189.

9

The Federal Rules impose more stringent pleading requirements on "all averments of fraud or mistake" than it does on other claims. Fed. Rule Civ. P. 9(b). Under Rule 9(b), a party alleging mistake must state the particular circumstances that constitute the mistake. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The primary purpose of Rule 9(b)'s heightened pleading requirements is to "afford defendant[s] fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990). In a claim for contract reformation, plaintiffs may meet the particularity requirement by alleging the nature of the mistake and when it occurred. *See Netherby Ltd. v. G.V. Licensing, Inc.*, No. 92-CV-4239, 1993 WL 463679, at \*5 (S.D.N.Y. 1993); *but see Citibank, N.A. v. Morgan Stanley & Co. Intern., PLC*, 724 F. Supp. 2d 407, 417 (S.D.N.Y. 2010) (finding that plaintiff met the particularity requirements by producing evidence of contemporaneous communications between the parties that showed their actual intent).

Under New York law, a contract can be reformed only when there was a mutual mistake or unilateral mistake combined with fraud. *E.g. AMEX Assurance Co. v. Caripides,* 316 F.3d 154, 161 (2d Cir. 2003); *George Backer Management Corp. v. Acme Quilting Co.*, 385 N.E.2d 1062 (N.Y. 1978). Mutual mistake occurs where the parties have reached an oral agreement and, unknown to either, the signed writing does not express that agreement, *e.g., Harris v. Uhlendorf,* 248 N.E.2d 892 (N.Y. 1969), such as when an inadvertent secretary's error fails to reflect the actual agreement of the parties, *Hart v. Blabey,* 39 N.E.2d 230, 232 (N.Y. 1942) ("Where there is no mistake about the agreement, and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.").

10

The equitable remedy of reformation is available for such typographical errors no matter how they occurred. *Hart*, 39 N.E.2d at 262. New York law, however, establishes a "heavy presumption that a deliberately prepared and executed written instrument manifests the true intention of the parties, and a correspondingly high order of evidence is required to overcome that presumption." *Chimart Assocs. v. Paul,* 66 N.Y.2d 570, 574 (1986) (internal quotations and citations omitted). The burden of proof is on the plaintiff to establish the cause for reformation by clear and convincing evidence. *See Nash v. Kornblum,* 86 N.E.2d 551, 700 (N.Y. 1962).

Marcum has pled sufficient facts to state a claim for contract reformation, even under the heightened standard of Rule 9(b). It describes the nature and location of the "typographical error" and states that the contract as written does not reflect the intent of the parties. Amended Ans. ¶ 189-90. It supports this claim by citing to other sections of the contract that reflect the parties' actual, contrary intent. *Id.* ¶ 190. This is sufficient to place the claim in play, although it seems doubtful that the facts support reformation under New York law.

### B. Gross Negligence

Marcum claims that Barbagallo was grossly negligently in performing his duties as an employee and non-equity partner at Marcum. Amended Ans. ¶ 176-180. It alleges that Barbagallo "failed to competently perform professional services" and exhibited "a wanton disregard for professional standards." *Id.* ¶ 178. To the extent that Marcum alleges malpractice, the claim is dismissed. The issue of whether Barbagallo breached his ordinary duty of care as an employee will be tried.

Under New York law, an accountant is generally only liable in malpractice to his clients for ordinary negligence; in order to be liable to third parties, gross negligence is required. *State Street Trust Co. v. Ernst*, 15 N.E.2d 416, 418-19 (N.Y. 1938). An ordinary negligence claim

11

requires the claimant to assert and prove "(1) a duty owed by the [offender] to the [claimant], (2) a breach thereof, and (3) injury proximately resulting therefrom." *Solomon by Solomon v. City of New York*, 489 N.E.2d 1294, 1294 (N.Y. 1985). In order to constitute gross negligence, the offending act or omission must evince "a reckless disregard for the rights of others or . . . intentional wrongdoing." *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 454 (2d Cir. 2009); *Sommer v. Fed. Signal Corp.,* 593 N.E.2d 1365, 1371 (N.Y. 1992). Conduct is reckless where it "generally imports the concept of heedless indifference to consequences to another" or "is highly unreasonable and . . . represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *AMW Materials Testing*, 584 F.3d at 454. Whether there was ordinary or gross negligence is a question for the jury. *Ugarriza v. Schmieder,* 386 N.E.2d 1324, 1325 (N.Y. 1979) ("Negligence cases by their very nature do not usually lend themselves to summary judgment, since often, even if all parties are in agreement as to the underlying facts, the very question of negligence is itself a question for jury determination."); *Food Pageant, Inc. v. Consolidated Edison Co., Inc.*, 429 N.E.2d 738, 740 (N.Y. 1981) ("Where the inquiry is to the existence or nonexistence of gross negligence, the ultimate standard of care is different [from ordinary negligence], but the question nevertheless remains a matter for jury determination.").

Barbagallo had a duty to exercise a reasonable degree of care and competence in the performance of his professional services. Since Barbagallo was a certified accountant and his employer was supplying accounting services, he should have known that both employer and client depended on him. The employer would be liable for the professional malpractice for failures of its accountant employees.

12

Barbagallo's right to continued employment by Marcum stems in part from his duty to avoid malpractice or negligence. Plaintiff's malpractice or negligence causing harm to a client could be a basis for firing him. It is not a basis for a claim of damages against an employee by his accounting firm employer.

An accountant's duty to provide competent services only extends to third parties with whom the accountant is in privity. *Credit Alliance Corp. v. Arthur Andersen & Co.*, 483 N.E.2d 110, 117-18 (N.Y. 1985). For liability to attach, "(1) the accountants must have been aware that the financial reports were to be used for a particular purpose; (2) in the furtherance of which a known party was intended to rely; and (3) there must have been some conduct on the part of the accountants linking them to that party, which evinces the accountants' understanding that the party would rely." *Id.* at 118; *see Barrett v. Freifeld*, 883 N.Y.S.2d 305, 307 (2d Dep't 2009).

Marcum does not claim that it relied to its detriment on Barbagallo's work product; it only claims that his "failure to perform his responsibilities in a competent manner has caused damages to Marcum as well as to its reputation." *Id.* ¶ 179. Apparently no New York court has held that an accountant's failure to provide competent professional services to his clients makes him liable in malpractice to his employer.

As an employee and agent, Barbagallo owed Marcum a number of other duties, including the duty to avoid ordinary negligence. *Cf. Havas v. Victory Paper Stock Co.*, 402 N.E.2d 1136, 1138 (N.Y. 1980) ("[W]henever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to the circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger."). Because this duty arises from the employment

13

relationship, rather than Barbagallo's professional responsibilities, Marcum need not meet any heightened standard of proof, such as gross negligence.

Marcum claims that Barbagallo failed to bill and collect fees due from Marcum's clients and did not remit cash payments he received. *Id.* ¶ 178. The company lost revenue due to his improper negotiation of invoices. *Id.* These deficiencies may constitute a breach of his duty to avoid ordinary negligence wholly apart from any obligation to avoid malpractice.

### C. Unjust Enrichment

Unjust enrichment is a quasi-contract claim designed to prevent "a person [from] enrich[ing] himself unjustly at the expense of another." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009). "To prevail on a claim for unjust enrichment in New York, a plaintiff must establish 1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). The existence of a valid written contract generally precludes proceeding on grounds of unjust enrichment, *IDT Corp.*, 907 N.E.2d at 274, unless there is a bona fide dispute over the existence of the contract or the contract does not cover the dispute in question, *Zuccarini v. Ziff-Davis Media, Inc.*, 762 N.Y.S.2d 621, 622 (2d Dep't 2003).

In the present case, the existence of an employment contract between Barbagallo and Marcum is undisputed. Nevertheless, Marcum alleges that Barbagallo was unjustly enriched at its expense because Barbagallo: (1) benefited from continuing to perform professional services for Marcum's clients after he left the company, and (2) received ten percent commissions from Marcum when he was only entitled to five percent. Amended Ans. ¶ 182-83.

14

Both of these issues arise under the Contract. The first is covered by section 13.1, which requires Barbagallo to compensate Marcum for any clients "serviced or consulted during his/her tenure at Marcum and which clients have left Marcum for the purpose of continuing its relationship" with Barbagallo or his employer. Contract Sec. 13.1. The second is covered by section 1.2, which requires that Barbagallo follow the procedures in the Handbook, including the provisions on the amount of commissions owed to him. *See* Contract Sec. 1.2, Handbook at 23.

Because there is no genuine disagreement over the existence of a contract and the Contract covers both of the disputed issues, Marcum's counterclaim for unjust enrichment is dismissed. Marcum can proceed on these issues under its breach of contract claim.

### D. Marcum's Other Counterclaims Against Barbagallo

Barbagallo has not moved to dismiss Marcum's remaining three counterclaims for: (1) breach of contract, (2) misappropriation of trade secrets, and (3) breach of a fiduciary duty as a former non-equity partner at Marcum. Marcum has made no formal motion for default judgment on these claims, but suggests in its papers that a default judgment may be appropriate because plaintiff has not responded. Mem. of L. in Opp. to Joseph S. Barbagallo's Partial Mot. to Dismiss 2, Doc. Entry 15, June 20, 2011.

When a motion is served, Federal Rule of Civil Procedure 12(a)(4) extends time to answer claims until ten days after that motion is decided. Thus, in the interest of judicial economy and avoiding piecemeal answers, "a partial motion to dismiss will suspend the time to answer those claims or counterclaims that are not subject to the motion." *Gortat v. Capala Bros., Inc.*, 257 F.R.D. 353, 366 (E.D.N.Y 2009). A partial default judgment against plaintiff is denied.

### V.    Citrin's Motion to Dismiss Marcum's Claims

15

### A. Tortious Interference with Contract

Marcum alleges that Citrin "knowingly and substantially participated in, encouraged and/or procured Barbagallo's and Glinski's breach of their contractual obligations" to forbear "solicitation of Marcum's clients and the use of Marcum's confidential information." Amended Ans. ¶ 199-200. Citrin's motion to dismiss this claim is denied.

To establish a claim for tortious interference with a contract under New York law, a plaintiff must show: (1) the existence of a valid contract with a third party; (2) defendant's knowledge of that contract; (3) defendant's intentional and improper procuring of a breach, and (4) damages. *E.g. Llama Holding Co. v. Smith Barney,* 668 N.E.2d 1370, 1375 (N.Y. 1996); *see also Albert v. Loksen,* 239 F.3d 256, 274 (2d Cir. 2001). As long as a valid contract exists, "a plaintiff may recover damages for tortious interference with contractual relations even if the defendant was engaged in lawful behavior." *Carvel Corp. v. Noonan,* 818 N.E.2d 1100, 1103 (N.Y. 2004); *see also NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.,* 664 N.E.2d 492, 496 (N.Y. 1996); *Guard-Life Corp. v. S. Parker Hardware Mfg. Corp.,* 406 N.E.2d 445, 448 (N.Y. 1980).

Because an at-will employment relationship—as this was, *see* Contract Sec. 2.1—is voidable, a higher standard must be met. *Guard-Life,* 406 N.E.2d at 451. Plaintiff must show that defendant acted with malice or employed wrongful means. *See id.*; *see also Finley v. Giacobbe,* 79 F.3d 1285, 1295 (2d Cir. 1996); *Commander Terminals Holdings, LLC v. Poznanski,* 923 N.Y.S.2d 190, 194 (2d Dep't 2011). "Wrongful means include physical violence, fraud or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure; they do not, however, include persuasion alone although it is knowingly directed at interference with the contract." *Guard-Life,* 406 N.E.2d at 448; *see also Nifty Foods*

16

*Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 838 (2d Cir. 1980) ("If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct."); *Carvel Corp.,* 818 N.E.2d at 1102 (stating that wrongful means "must amount to a crime or an independent tort"). Courts are disinclined to find tortious interference with an at-will employment contract unless a former employer can show that fraudulent or criminal activity was used in soliciting its employee. *See Carvel Corp.,* 818 N.E.2d at 1102; *Lockheed Martin Corp. v. Atlas Commerce Inc.,* 725 N.Y.S.2d 722 (3d Dep't 2001).

It is unclear whether the heightened "wrongful means" standard applies to other enforceable terms of an at-will employment contract. *See Watts v. Jackson Hewitt Tax Service Inc.*, 675 F.Supp.2d 274 (E.D.N.Y. 2009) (stating that employees' breach of their confidentiality agreements would not support a tortious interference with contract claim because they were at-will employees); *Lockheed Martin Corp.,* 725 N.Y.S.2d at 725 (evaluating whether an at-will employee's breach of a confidentiality agreement met the wrongful means standard). Non-compete clauses, however, are enforceable even when the employment contract is terminable at-will. *Zellner v. Stephen D. Conrad,* 589 N.Y.S.2d 903, 906 (2d Dep't 1992); *see Clark Paper & Mfg. Co. v. Stenacher*, 140 N.E. 708, 710 (N.Y. 1923) ("An employee may be prevented under his negative covenant from revealing trade secrets even where the term of employment is at will, and has not been fixed for a definite period."). A claim of tortious interference with a non-compete clause would not have to allege wrongful means if the new employer was aware of the clause and assisted or encouraged the employer to violate it to its benefit. *Cf. Lockheed Martin Corp.,* 725 N.Y.S.2d at 725 (stating that the wrongful means standard applies when "the allegations concern at-will employees not bound by covenants not to compete").

17

The Contract specifies that Barbagallo was an at-will employee.  Contract Sec. 2.1; *see also Wright v. Cayan,* 817 F.2d 999, 1002 (2d Cir. 1987), *cert. denied,* 484 U.S. 853 (1987) (holding that, under New York law, employment is at-will unless the duration of an employment contract is set forth explicitly); *Sabetay v. Sterling Drug. Inc.,* 506 N.E.2d 919, 920–21 (1987) (same).  Because nothing beyond mere persuasion is alleged, it has not shown that wrongful means were used by Citrin to solicit Marcum's employees.

The non-compete clause, however, is part of an independent bargain.  Marcum need not show that Citrin employed wrongful means in order to plead a claim of tortious interference with that agreement.

Marcum has pled sufficient facts to allege that Citrin tortiously interfered with its non-compete contract with Barbagallo.  It alleges that a non-compete clause existed and that Citrin was "aware of Barbagallo's contractual restrictions against the solicitation of Marcum's clients." Amended Ans. ¶ 198-199.  Furthermore, it claims Citrin "participated in, encouraged and/or procured Barbagallo's and Glinski's breach" of those restrictions, *id.* ¶ 200, and that such "conduct proximately caused and will cause damages to Marcum," *id.* ¶ 202.

Accordingly, Marcum's claim of tortious interfere with the non-compete clause may proceed, but not any claim of tortious interference with Barbagallo and Glinski's employment contracts per se.

### B.  Aiding and Abetting Breach of Fiduciary Duty

Marcum has pled sufficient facts to state a claim that Citrin aided and abetted Barbagallo's breach of a fiduciary duty.  To establish a claim of aiding and abetting, a party must allege: 1) the existence of a violation by the primary wrongdoer; 2) knowledge of this violation by the aider and abettor; and 3) proof that the aider and abettor substantially assisted in the

18

primary wrong. *Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir. 1983). A tortfeasor provides

substantial assistance in the breach of a fiduciary duty "if he . . . affirmatively assists, helps

conceal, or by virtue of failing to act when required to do so enables it to proceed." *Catskill*

*Development, L.L.C. v. Park Place Entertainment Corp.*, 547 F.3d 115, 134 (2d Cir. 2008).

Marcum has pled sufficient facts to allege that Barbagallo owed the company a fiduciary

duty. New York law "embraces not only those [fiduciary relationships] the law has long

adopted—such as trustee and beneficiary—but also more informal relationships where it can be

readily seen that one party reasonably trusted another." *Brass v. American Film Technologies,*

*Inc.,* 987 F.2d 142, 150–51 (2d Cir. 1993). A fiduciary duty exists whenever a party is "under a

duty to act or to give advice for the benefit of the other upon matters within the scope of the

relation." *St. John's University, New York v. Bolton,* 757 F. Supp. 2d 144, 166 (E.D.N.Y. 2010).

The plaintiff must show "(1) the vulnerability of one party to the other which (2) results in the

empowerment of the stronger party by the weaker which (3) empowerment has been solicited or

accepted by the stronger party and (4) prevents the weaker party from effectively protecting

itself." *Atlantis Information Technology, GmbH v. CA, Inc.,* 485 F. Supp. 2d 224, 231–32

(E.D.N.Y. 2007) (quotation omitted). Who is the "stronger" and who is the "weaker" party

depends on the context of the particular issue in question. While generally the employer is

stronger, in particular instances, such as when an employee has access to an employer's secrets,

he may have a substantial power to leak them unbeknownst to his employer. The existence of a

fiduciary relationship is quintessentially a question of fact and is determined on a case-by-case

basis. *E.g. St. John's University, New York,* 757 F. Supp. 2d at 166.

Marcum alleges that, because Barbagallo was "entrusted with highly confidential and

proprietary information concerning Marcum's business operations and customer relationships,

Barbagallo owed Marcum a fiduciary duty not to disclose this information to third parties or to use this information for purposes other than serving the interests of Marcum." Amended Ans. ¶ 172. These allegations raise a colorable claim that Barbagallo owed Marcum a fiduciary duty. Barbagallo has not moved to dismiss this claim.

Marcum further alleges that Citrin "knowingly and substantially participated in Barbagallo's and Glinski's breach." *Id.* ¶ 205. It claims that Barbagallo disclosed confidential client information to Citrin, *id.* ¶ 141(a), and conspired to induce Marcum's clients to join Citrin, *id.* ¶ 145-46. These allegations are sufficient to state a cause of action.

### C. Unfair Competition

Marcum claims that Citrin engaged in unfair competition by misappropriating its confidential client lists. *Id.* ¶ 209. The claim has merit.

Common law unfair competition is "a broad and flexible doctrine ... [that] is adaptable and capacious." *Roy Export Co. Establishment v. Columbia Broad. Sys. Inc.*, 672 F.2d 1095, 1105 (2d Cir. 1982) (citations and quotations omitted). Nevertheless, unfair competition "must be grounded in either deception or appropriation of the exclusive property of the plaintiff." *H.L Hayden Co. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1025 (2d Cir. 1989). "The scope of the unfair competition action is generally limited to three categories: passing off one's goods as those of another, engaging in activities solely to destroy a rival, and using methods themselves independently illegal." *Coca-Cola N. Am. v. Crawley Juice, Inc.*, 09-CV-3259, 2011 U.S. Dist. LEXIS 52813, at *21 (E.D.N.Y. May 17, 2011); *see also Berlitz Schs. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980); *Roy Export Co.*, 672 F.2d at 1105.

To sustain an unfair competition claim involving misappropriation, a plaintiff must establish that the defendant: (1) "misappropriated the plaintiff[]'s labors, skills, expenditures, or

20

good will"; and (2) "displayed some element of bad faith in doing so." *Abe's Rooms, Inc. v. Space Hunters, Inc.,* 833 N.Y.S.2d 138, 140 (2d Dep't 2007); *see also Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir. 1980). Some courts also require a plaintiff to allege special damages by showing "direct financial loss, lost dealings, or an accounting of the profits resulting from the anticompetitive acts at issue." *Coca-Cola N. Am.,* 2011 U.S. Dist. LEXIS 52813 at *18; *see also CA, Inc. v. Simple.com, Inc.,* 621 F. Supp. 2d 45, 52 (E.D.N.Y. 2009); *Waste Distillation Technology, Inc. v. Blasland & Bouck Engineer, P.C.,* 523 N.Y.S.2d 875, 877 (2d Dep't 1988); *but see Fairfield Financial Mortg. Group, Inc. v. Luca,* 584 F. Supp.2d 479, 487 (E.D.N.Y. 2008) ("The Court is unaware of any New York federal or state court that has held that special damages is an element of an unfair competition claim."). Simply alleging that defendant diverted plaintiff's customers and business is sufficient to show special damages. *See CA, Inc.,* 621 F. Supp. 2d at 54; *Out of the Box Promotions, LLC v. Koschitzki,* 866 N.Y.S.2d 677, 681 (2d Dep't 2008).

Although unfair competition often involves misappropriation of trade secrets or ideas, a claim may be based on misappropriation of client lists, internal company documents, and business strategies "if wrongful or fraudulent tactics [are] employed." *Leo Silfen, Inc. v Cream,* 278 N.E.2d 636, 639 (N.Y. 1972); *see also Milton Abeles, Inc. v. Farmers Pride, Inc.,* 603 F. Supp. 500, 503 (E.D.N.Y. 2009) (holding that misappropriation of a confidential distribution list of customers and subdistributors may give rise to a claim of unfair competition); *Berman v. Sugo LLC,* 580 F. Supp. 2d 191, 209 (S.D.N.Y. 2008) (stating that an unfair competition claim may be based on the misappropriation of client lists, internal company documents, and business strategies). Thus, "solicitation of an employer's customer by a former employee is . . . actionable [where] . . . there was wrongful conduct by the employee, such as physically taking or

21

copying the employer's files or using confidential information." *Paz Systems, Inc. v. Dakota Group Corp.*, 514 F. Supp. 2d 402, 409 (E.D.N.Y. 2007); *see also Advanced Magnification Instruments of Oneonta, N.Y., Ltd. v. Minuteman Optical Corp.*, 522 N.Y.S.2d 287 (3d Dep't 1987).

Marcum has pled sufficient facts to support its claim that Citrin engaged in unfair competition. Marcum claims that Citrin has "misuse[d] ... Marcum's confidential and proprietary information to solicit Marcum's clients." Amended Ans. ¶ 209; *see also id.* ¶ 134. Even if this information does not rise to the level of a trade secret, Marcum claims that it "invested significant labor, skill, and money in developing its client lists," Marcum LLP's Mem. of L. in Opp. to Citrin's Mot. to Dismiss, Doc. Entry 23, Aug. 1, 2011, and that this information allows Citrin "to compete directly with Marcum without incurring all of the start-up costs, risks and time incurred by Marcum in acquiring those relationships." Amended Ans. ¶ 210. Moreover, wrongful tactics were allegedly employed to acquire this confidential client information, since Barbagallo allegedly secretly removed these files and emailed them to Cooperman and to his private email address. *Id.* ¶ 141(a), 146(c). There is no indication that Citrin used these client lists under a claim of right or in good faith; rather, Marcum alleges that Citrin's conduct was part of a "scheme to unlawfully divert Marcum clients to Citrin." *Id.* ¶ 194.

Marcum has also pled the requisite "special damages." Marcum alleges and demands an accounting for the approximately sixty-seven Marcum clients with whom Barbagallo continued professional relationships with after his termination with Marcum ended. *Id.* ¶ 154, 159. Marcum's unfair competition claim may proceed.

### D. Unjust Enrichment

22

Since there is no valid contract between Marcum and Citrin, Marcum's unjust enrichment claim is not categorically barred. *See supra* Part IV(C). The claim nevertheless fails.

"Although privity is not required for an unjust enrichment claim, a claim will not be supported if the connection between the parties is too attenuated." *Mandarin Trading Ltd. v. Wildenstein,* 944 N.E.2d 1104, 1111 (N.Y. 2011). There must be a connection or relationship between the parties that could have caused reliance or inducement on the plaintiff's part. *Id.*; *Sperry v. Crompton Corp.,* 863 N.E.2d 1012, 1018 (N.Y. 2007). It is not enough for a plaintiff to allege that a defendant "simply knew of the plaintiff's existence" or "may have profited, in one form or another, from plaintiff's work." *Georgia Malone & Co. v. Ralph Rieder,* 926 N.Y.S.2d 494, 498 (1st Dep't 2011); *see also Graystone Materials Inc. v. Pyramid Champlain Co.,* 604 N.Y.S.2d 295, 296 (3d Dep't 1993). The benefit must have been bestowed at the defendant's behest. *See Ehrlich v. Froehlich,* 903 N.Y.S.2d 400, 402 (2d Dep't 2010); *Seneca Pipe & Paving Co. v. South Seneca Cent. School Dist.,* 880 N.Y.S.2d 807, 808 (4th Dep't 2009).

An unjust enrichment claim is thus unavailable when an employer benefits from misappropriated material gleaned from the former employee of a competitor, even when the defendant-employer knows or induces such misappropriation. *See Wayne Thomas Salon, Inc. v. Moser,* No. 603632/092010, 2010 N.Y. Misc. LEXIS 5015, *12 (N.Y. Sup. Ct. Oct. 12, 2010) (dismissing unjust enrichment claim; although the complaint alleged that former employee enriched defendant, his new employer, "by accepting client's personal contact information, viewing client information on the . . . computer, stealing confidential client information, informing clients of her resignation, and by soliciting [plaintiff's] clients," there was no "allegation that the plaintiff itself conferred any benefit upon the ... defendants); *Zeno Group, Inc. v. Charlotte Wray,* No. 602632/06, 2008 N.Y. Misc. LEXIS 10229, *30 (N.Y. Sup. Ct. Sept.

23

26, 2008) ("The complaint states that defendants have been unjustly enriched in receiving the benefits of employment and client relationships, 'including that of a special and extraordinary employee who had access to the highly confidential and proprietary information of [plaintiff] . . . . [T]his argument is ineffective. Defendants presumably paid [employee] for her services, and did work in exchange for payment from clients. Nothing was 'bestowed' upon them.").

The connection between Marcum and Citrin is too attenuated to support a claim of unjust enrichment. Although Marcum alleges that Citrin "received benefits to which it is not entitled from Marcum by Barbagallo's withdrawal from Marcum with its clients," Amended Ans. ¶ 213, this is not enough to state a claim for unjust enrichment on which relief can be granted.

### E. Punitive Damages

To obtain punitive damages in ordinary tort actions, a New York plaintiff must show that the defendant committed a tort under "circumstances of aggravation or outrage, such as spite or 'malice,' or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton." *Prozeralik v. Capital Cities Communications, Inc.,* 626 N.E.2d 34, 42 (1993). This conduct must be "aimed at the public generally." *Rocanova v. Equitable Life Assurance Soc. of U.S.*, 634 N.E.2d 940, 943-44 (N.Y. 1994); *see also Walker v. Sheldon,* 179 N.E.2d 497, 498 (N.Y. 1961); *Fabiano v. Philip Morris Inc.*, 862 N.Y.S.2d 487, 490 (1st Dep't 2008) ("[P]unitive damages claims are quintessentially and exclusively public in their ultimate orientation and purpose . . . . A claim for punitive damages may . . . be rooted in personal injury, but for such a claim to succeed the injury must be shown . . . to reflect pervasive and grave misconduct affecting the public generally."). The purpose of punitive damages is "not to compensate the injured party but rather to punish the tortfeasor and to deter th[e] wrongdoer and others similarly situated from

24

indulging in the same conduct in the future." *Ross v. Louise Wise Servs., Inc.,* 868 N.E.2d 189, 196 (N.Y. 2007).

Marcum seeks punitive damages against Barbagallo for misappropriation of trade secrets, Amended Ans. ¶ 169, and breach of fiduciary duty owed to Marcum, *id.* ¶ 175. It also seeks punitive damages against Citrin for its tortious interference with contract, *id.* ¶ 203, and its aiding and abetting of Barbagallo's breach of fiduciary duty, *id.* ¶ 207.

None of these claims implicates behavior directed at the public in general, nor are they based on outrageous conduct. The claims for punitive damages are dismissed.

## VI.    Equitable and Legal Issues

Because the case will proceed to trial, some discussion of the interaction between the legal and equity claims raised in this case is warranted. The Contract between Barbagallo and Marcum is clear. It provides in bold print: "Parties waive trial by jury." Contract Sec. 21.1(b). This waiver does not encompass the claims against the third party, Citrin. In the absences of a waiver, there are non-equitable issues that must be tried by a jury.

Both Barbagallo and Marcum make claims in both equity and law. Under the Seventh Amendment, each would be entitled to a trial by jury on the legal claims, including the breach of contract claims, in the absence of their jury waiver.

Issues that are common to both legal and equitable claims in a case should be tried by a jury before equitable claims are decided in order to preserve the right to jury trial. *Beacon Theaters, Inc. v. Westover*, 359 U.S. 500, 510 (1959). "[A] trial court will necessarily have to use its discretion in deciding whether the legal or equitable cause should be tried first." *Id.* When the two claims are independent of each other, the court has discretion to determine the

25

order of trial.  9 CHARLES ALAN WRIGHT, ARTHUR MILLER, ET AL., FEDERAL PRACTICE AND PROCEDURE CIVIL § 2338 (3d ed. 1995).

In the instant case, a decision to grant or deny the contract reformation claim will determine plaintiff's retirement benefits.  If the court decides that the Contract was designed to *not* award retirement benefits to employees who voluntarily resign, Barbagallo's claim for retirement benefits will be denied.  Despite the decisive effect of the contract reformation claim on the breach of contract claim, there are no factual issues common to both claims.  In the reformation claim, the court must decide the intent of the parties at the time of contracting, whereas in the breach claim, the factfinder must decide whether a breach of the intended contract occurred.

The court exercises its discretion in determining the order of trial of independent claims to decide the reformation claim simultaneously with the breach of contract claim.  An advisory jury on equitable claims will be used unless Citrin agrees to a non-jury trial.  The same jury will decide open legal claims and advise on equitable claims.

## VII.    Enforceability of the Non-Compete Clause

The validity of a non-compete clause is a question of law that may be resolved by the judge. *Consolidated Syrup Corp. v. Kaiser*, 22 N.Y.S.2d 307, 308 (N.Y. Sup. Ct. 1940); *see also, e.g., BDO Seidman v. Hirshberg*, 712 N.E.2d 1220, 1223 (N.Y. 1999) (deciding validity of a restrictive covenant on a motion for summary judgment).  Where the validity of a non-compete clause turns on disputed facts, courts may refrain from ruling until after trial. *See, e.g., Tender Loving Care v. Franzese*, 517 N.Y.S.2d 50, 50 (2d Dep't 1987).

A restrictive covenant is valid only if it is reasonable—i.e., if it: "(1) is *no greater* than is required for the protection of the *legitimate interest* of the employer, (2) does not impose undue

26

hardship on the employee, and (3) is not injurious to the public." *BDO Seidman*, 712 N.E.2d at

1223 (emphasis in original).  Courts have found that "an employer has a legitimate interest in

preventing former employees from exploiting or appropriating the goodwill of a client or

customer, which had been created and maintained at the employer's expense, to the employer's

competitive detriment." *Id.* at 1225.  Both the geographic and temporal scope of the restriction is

relevant in determining whether the covenant is reasonable. *Ticor Title Ins. Co. v. Cohen*,

173 F.3d 63, 69 (2d Cir. 1999).

   Once a covenant is deemed reasonable, it must still fall into one of two categories in

order to be enforced by a preliminary injunction. *See Reed, Roberts Assocs. v. Strauman,* 353

N.E.2d 590, 593 (1976).  For an employer to prevail, the covenant must be necessary either: (1)

to "prevent the disclosure or use of trade secrets or confidential customer information;" or (2) to

stop an employee with unique or extraordinary skills from working for a competitor to the

detriment of the initial employer. *See id.*

   In *BDO Seidman*, the New York Court of Appeals upheld a restrictive covenant that

required an accountant to compensate his former employer for any damages sustained by the

firm if it lost any clients to the accountant within eighteen months of his departure.  712 N.E.2d

at 1225-26.  The Court, however, limited the terms of the covenant to only prohibit the

accountant from retaining clients he worked with directly during the course of his employment

with the firm. *Id.* at 1225.  A covenant that prevented the accountant from retaining his personal

clients and those clients that he had not served to any significant extent while employed at the

firm would be overbroad. *Id.*

   The non-compete clause at issue in this case is similar to the covenant in *BDO Seidman.*

The clause prohibits Barbagallo from revealing any of Marcum's confidential or proprietary

27

information.  Contract Sec. 12.1.  It forbids Barbagallo from performing any services for Marcum's clients for two years after his termination.  *Id.*  An exception is made if Barbagallo is employed exclusively for a Marcum client as an in-house accountant.  *Id.*  If Barbagallo continues a professional relationship with a Marcum client after his departure, he is required to pay his former employer 125% of the last twelve months of billing to that client.  *Id.* Sec. 13.1.

It is not clear on the record what the effective public policy implications of the non-compete clause are, or whether it can be enforced by preliminary injunction.  The validity of the clause will be determined following trial.  At this time, it does not appear to violate public policy.

## VIII.  Barbagallo's Remaining Claims

Marcum has not brought a motion to dismiss Barbagallo's claims against it.  As the existence of the employment contract precludes Barbagallo's unjust enrichment claim, *see* Part IV(C), *supra*, this claim is dismissed.  The following claims by Barbagallo against Marcum will be tried:

1.  Whether Barbagallo is entitled to retirement benefits under 29 U.S.C. § 1132(a)(1)(B), Compl. ¶¶ 62-65;

2.  Whether Marcum breached its fiduciary duty to Barbagallo in violation of 29 U.S.C. §§ 1104, 1132(a)(1)(B), *id.* ¶¶ 63-75;

3.  Whether Marcum breached its co-fiduciary duties under 29 U.S.C. §§ 1104, 1005, 1132(a)(1)(B), *id.* ¶¶ 76-86;

4.  Whether Marcum breached its employment contract with Marcum by failing to provide him with his retirement benefits, compensate him for unused paid time off, or pay him commissions and bonuses owed, *id.* ¶¶ 93-97;

28

5. Whether Marcum tortiously interfered with Barbagallo's contractual relationship with Citrin by sending a letter to that company demanding return of plaintiff's professional telephone number, *id.* ¶¶ 103-109.

As a result of these violations of the Contract, Barbagallo claims he suffered approximately $400,000.00 in damages. Marcum claims approximately the same amount of damages due to lost clients. *See* Tr. of Motion to Dismiss Hr'g, Oct. 25, 2011.

Barbagallo's claim for statutory equitable relief under 29 U.S.C. § 1132(a)(3) as a result of Marcum's breach, *Id.* ¶¶ 87-92, as well as his claim for a declaratory judgment that he owns the telephone number (215) 968-5081, *Id.* ¶¶ 110-12, will also be determined during or following trial.

## IX. Conclusion

Plaintiff's motion to dismiss defendant's counterclaims is granted in part and denied in part. Marcum's punitive damages are dismissed, as are the unjust enrichment claims against all parties. Any claim for gross negligence by Barbagallo based on malpractice is dismissed. The other challenged claims stand. No default judgment is granted on the unchallenged counterclaims.

No motion for summary judgment shall be made since the papers and situation strongly suggest that it would not be productive.

The case is set down for trial on March 12, 2012. All *in limine* motions shall be heard on March 5, 2012. On March 5, 2012, the parties shall provide each other with lists of witnesses with summaries of their proposed testimony, lists of marked exhibits, proposed jury charges, and proposed findings of fact and law.

The issues tentatively designated for trial are:

29

1. What were the terms of Barbagallo's employment contract with Marcum?

2. Was Barbagallo negligent in the performance of his duties as a Marcum employee?

3. What were the circumstances of Barbagallo's withdrawal from Marcum?

4. Were Barbagallo's retirement and other benefits wrongfully withheld?

5. Did Marcum owe a fiduciary duty to Barbagallo, and did it breach that duty?

6. Did Barbagallo owe a fiduciary duty to Marcum, and did he breach that duty?

7. Did Citrin aid and abet Barbagallo in any breach?

8. Did Citrin wrongfully acquire Marcum's confidential client information?

9. Does this confidential client information qualify as a trade secret?

10. Who owns the telephone number (215) 968-5081?

11. What damages, if any, were suffered by Barbagallo?

12. What damages, if any, were suffered by Marcum?

13. Is Citrin jointly and severally liable for any damages?

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   October 25, 2011
        Brooklyn, New York

30