
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                        :

JOSEPH S. BARBAGALLO,             :

                        :

                 Plaintiff,   :

                        :

       – against –        :

                        :

MARCUM LLP AND              :
JOHN DOE NOS. 1-9,          :

               Defendants,   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                        :

MARCUM LLP,               :

                        :

Counterclaim and Third-Party Plaintiff   :

                        :

       – against –        :

                        :

JOSEPH S. BARBAGALLO,            :

                        :

       Counterclaim Defendant,   :

                        :

AND                      :

                        :

CITRIN COOPERMAN & COMPANY, LLP,  :

                        :

       Third-Party Defendant.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

MEMORANDUM & ORDER

11-CV-1358

**Appearances:**

For Joseph S. Barbagallo:      Alan S. Fellheimer
                              Fellheimer & Eichen, LLP
                              45 Rockefeller Plaza
                              Suite 2000
                              New York, NY 10111

                              Derek Eddy
                              Fellheimer & Eichen, LLP
                              Two Liberty Place
                              50 South 16th Street



1

34th Floor
Philadelphia, PA 19102

For Marcum LLP:

John Houston Pope
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

Raymond T. Mak
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

Kevin Richard Brady
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

Alexis Downs
Epstein Becker & Green, P.C.
250 Park Avenue
New York, NY 10177

For Citrin Cooperman & Co. LLP:

John K Crossman
Zukerman Gore & Brandeis LLP
875 Third Avenue
New York, NY 10017

Frank Christian Welzer
Zuckerman Gore & Brandeis LLP
11 Times Square
New York, NY 10036

**JACK B. WEINSTEIN, Senior District Judge:**

I.    Introduction...................................................................................................................... 3
II.   Relevant Facts.................................................................................................................. 5
III.  Motion to Dismiss Standard............................................................................................ 7

2

IV.     Only Eligible for Indemnification for Defense of Dismissed Claims................................... 8

   A.     No Indemnification for Intentional Torts .......................................................................... 9

      1.     No Contractual Indemnification for Intentional Torts.................................................. 9

      2.     No Contractual Duty to Defend Intentional Torts ...................................................... 10

      3.     No Common Law Indemnification for Intentional Torts ............................................ 12

   B.     Barbagallo Must Only Indemnify Citrin Against Dismissed Unjust Enrichment Claim 13

      1.     Tortious Interference and Aiding and Abetting a Breach of a Fiduciary Duty Claims are Intentional Torts........................................................................................................ 13

      2.     Unfair Competition is an Intentional Tort ................................................................. 14

      3.     Citrin May Be Entitled to Indemnification for Unjust Enrichment............................ 15

V.      Breach of Fiduciary Duty................................................................................................... 16

VI.     Contribution ....................................................................................................................... 18

   A.     Generally ......................................................................................................................... 18

   B.     No Contribution for Economic Loss Resulting from Breach of Contract....................... 20

   C.     Contribution Permitted for Marcum's Monetary Loss Not Resulting from Breach of Contract................................................................................................................................. 22

VII.    Conclusion ......................................................................................................................... 23

## I.     Introduction

In this contract and tort action, plaintiff Joseph Barbagallo, an accountant, moved from one accounting firm, Marcum LLP ("Marcum"), to another, Citrin Cooperman & Company, LLP ("Citrin"), taking former firm clients with him. Raised are a series of legal and equitable claims and counterclaims ranging from entitlement to retirement benefits to breach of fiduciary duties to application of a non-compete clause. While much of the dead wood can be cleared before trial, central matters in contention will require both a bench and a jury trial.

Barbagallo moves to dismiss Citrin's cross-claims for: 1) contractual indemnification; 2) common-law indemnification; 3) contribution; and 4) breach of an alleged fiduciary duty owed by Barbagallo to Citrin. *See* Mem. of L. Supp. Plaintiff Barbagallo's Mot. to Dismiss Citrin Cooperman's Crossclaim Against Him for Contractual Indemnification, Doc. Entry 52, Mar. 26,

2012 ("Barbagallo First Mot. to Dismiss"); Reply Mem. of L. Supp. Pl. Barbagallo's Mot. to Dismiss Citrin's Cross-Claim for Contractual Indemnification 6-8, Doc. Entry 65, Apr. 19, 2012 ("Barbagallo First Mot. Reply"); Mem. of L. Supp. Pl. Barbagallo's Mot. to Dismiss Citrin's Am. Cross-Claim, Doc. Entry 63, Apr. 16, 2012 ("Barbagallo Second Mot. to Dismiss"). He argues that: 1) New York law does not permit contractual or common law indemnification for intentional torts, which are the only remaining claims in this case; 2) he has already reimbursed Citrin for expenses paid to defend dismissed unintentional tort claims; 3) New York does not permit contribution for claims that seek recovery for economic loss; and 4) the breach of fiduciary duty claim is duplicative of his breach of contract claim. *See* Barbagallo First Mot. to Dismiss; Barbagallo First Mot. Reply; Barbagallo Second Mot. to Dismiss. Although Barbagallo had previously moved for leave to amend his counterclaim against Marcum, *see* Mem. of L. Supp. Pl. Barbagallo's Mot. for Leave to Amend His Ans. to Def. Marcum LLP's Amended Counterclaim to Insert a Cross-Claim, Doc. Entry 56, Apr. 5, 2012, he has since withdrawn his motion, *see* Tr. of Hr'g, May 1, 2012.

Barbagallo's motion is granted in part and denied in part. He is correct that the claim for breach of his fiduciary duty to Citrin must be dismissed as duplicative of Citrin's claim for contractual indemnification. Since New York law does not permit indemnification for intentional torts, Barbagallo is not required to indemnify Citrin against the remaining claims in the case nor pay for the costs of defending against those claims. He may, however, be obligated to reimburse Citrin for the costs and attorneys' fees associated with litigating the unjust enrichment claim which was previously dismissed by the court. Since Marcum seeks to recover compensatory damages, not damages for economic loss, on its aiding and abetting breach of fiduciary duty and unfair competition claims, Citrin's claim of contribution for those claims

4

survives.

## II.     Relevant Facts

The facts underlying the substantive claims in this case are described at length in the October 25, 2011 memorandum and order. *See* Mem. & Order, Doc. Entry 39, Oct. 25, 2011. The details relevant to the instant motion are set forth below.

Marcum is an accounting firm with its principle place of business in Melville, New York. *See* Compl. ¶ 2, Doc. Entry 1, Mar. 18, 2011 ("Compl."). Citrin is a New York City-based accounting firm that competes directly with Marcum in the New York City and Philadelphia metropolitan areas. *See* Marcum's Am. Ans. ¶ 140, Doc. Entry 36, Sept. 22, 2011 ("Marcum Am. Ans."). Barbagallo, a Pennsylvania resident, is a certified public accountant. *See* Compl. ¶ 1.

Barbagallo was employed by Marcum from September 2009 to July 2010. *See* Marcum Am. Ans. ¶ 127; Citrin's Am. Cross-Claim ¶ 9, Doc. Entry 60, Apr. 12, 2012 ("Citrin Am. Cross-Claim"). Following his departure from Marcum, Barbagallo began working for Citrin on November 1, 2010.

As part of their employment negotiations, Citrin alleges that it "received assurances from Barbagallo that Barbagallo could join Citrin Cooperman, and that clients could follow him to Citrin Cooperman, without violating any obligations that he owed" to Marcum, including that: 1) "he had no obligation to make any payment to Marcum if referral sources for his litigation support work followed him;" 2) "no payment would be due to Marcum if clients of a former colleague of Barbagallo's at Marcum, Ed Glinski, followed him or Glinksi to Citrin;" and 3) "to the extent that Barbagallo owed any payments to Marcum for any clients that would follow Barbagallo, Barbagallo would make such payments to Marcum." Citrin Am. Cross-Claim ¶ 2.

Barbagallo's employment contract contained the following provision:

> 5. Violation of Other Agreements
> (a) Barbagallo represents and warrants to [Citrin] that he is legally able to enter into this Agreement and accept this engagement with [Citrin]; that Barbagallo is not prohibited by the terms of any agreements from entering into this Agreement; and the terms hereof will not and do not violate or contravene the terms of any agreement to which Barbagallo is or may be a party, or by which Barbagallo may be bound. Barbagallo agrees that, as it is a material inducement to [Citrin] that Barbagallo make the foregoing representations and warranties and that they be true in all respects. *Barbagallo shall forever indemnify and hold [Citrin] harmless from and against all liability, costs or expenses (including attorney's fees and disbursement) on account of the foregoing representations being untrue or any claims made against [Citrin].*

*Id.* Ex. A (Admission Agreement) (emphasis added). The contract specifies that it is to be "governed by, construed and enforced in accordance with the internal laws of the State of New York." *Id.* § 14.

On March 18, 2011, Barbagallo sued Marcum for, *inter alia*, failure to pay retirement benefits. *See generally* Compl. Marcum has since raised counterclaims against both Barbagallo and Citrin. *See generally* Marcum Ans., Doc. Entry 7, May 13, 2011; Marcum Am. Ans. In its most recent complaint, Marcum asserted causes of action against Citrin for: 1) tortious interference; 2) aiding and abetting a breach of a fiduciary duty; 3) unfair competition; and 4) unjust enrichment. *See* Marcum Am. Ans.

Barbagallo initially told Joel Cooperman, Citrin's managing partner, that he would honor his indemnification obligations, including paying Citrin's defense costs. Citrin Am. Cross-Claim ¶ 24. Throughout the summer of 2011, Barbagallo continued to confirm, in writing, that he would indemnify Citrin and pay its defense costs. *Id.* ¶ 25.

In June 2011, Citrin moved to dismiss all of the claims against it. Citrin's Mot. to Dismiss, Doc. Entry 18, June 29, 2011. Only the unjust enrichment claim was dismissed. Mem. & Order, Doc. Entry 39, Oct. 25, 2011. Remaining against Citrin are Marcum's claims for

6

tortious interference with contract; unfair competition; and aiding and abetting breach of a fiduciary duty.

Barbagallo paid a portion of Citrin's defense costs, sending a check for $2,000 directly to Citrin's lawyers on October 10, 2011. Citrin Am. Cross-Claim ¶ 26.

On January 3, 2012, Barbagallo disclaimed his obligation to indemnify Citrin for its costs, expenses, and attorneys' fees associated with this action. *Id.* ¶ 28 (quoting a letter from Barbagallo's attorney as stating that "Mr. Barbagallo will not be indemnifying or otherwise making payment for any liability of or representation of Citrin for any liability, damages, costs, expenses, or attorney's fees to either your firm or the Zuckerman firm whatsoever related to the Marcum Litigation").

Barbagallo resigned from Citrin three days later. *Id.* ¶ 5.

Citrin alleges that it incurred significant expenses and devoted substantial resources to defending itself in the instant action. *Id.* ¶ 27. In its amended cross-claim, Citrin seeks: 1) damages resulting from the breach of indemnification provision of Barbagallo's contract and a declaratory judgment stating it is entitled to indemnification; 2) a declaratory judgment that it acted without fault or with simple negligence; 3) damages resulting from Barbagallo's breach of his fiduciary duty to indemnify Citrin; 4) contribution; and 5) common law indemnification. *See generally id.*

### III.     Motion to Dismiss Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows dismissal of claims when the pleading party has failed "to state a claim upon which relief can be granted." In ruling on a 12(b)(6) motion, a court must accept all factual allegations in the complaint as true and draw all reasonable inferences in plaintiff's favor. *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

7

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).

## IV.    Only Eligible for Indemnification for Defense of Dismissed Claims

Barbagallo does not dispute that his employment contract with Citrin could, by its plain terms, require him to indemnify that firm against recovery on the claims at issue in this case and pay for its defense costs. *See* Citrin Am. Cross-Claim Ex. A ("Barbagallo shall forever indemnify and hold [Citrin] harmless from and against all liability, costs or expenses (including attorney's fees and disbursement) on account of the foregoing representations being untrue or any claims made against [Citrin]."). Rather, he argues that the only claims currently alleged against Citrin are intentional torts, which cannot be indemnified against either by contract or under common law.

Citrin claims that, even if Barbagallo is not required by contract to indemnify it against damages resulting from its intentional torts, he is required to pay the costs of defending against such claims. Citrin Opp. to Barbagallo's Mot. to Dismiss Counterclaim for Contractual Indemnification 7-9, Doc. Entry 61, Apr. 12, 2012 ("Citrin Opp."). It also contends: 1) that Marcum "appears prepared to argue that even negligent receipt by Citrin . . . of Marcum's allegedly confidential client information constitutes 'common law unfair competition,'" *id.* 10-11; and 2) that it can recover for the costs of defending itself against the dismissed unjust

enrichment claim, which is not an intentional tort, *id.* 9.

## A.    No Indemnification for Intentional Torts

### 1. No Contractual Indemnification for Intentional Torts

New York law does not permit a party to indemnify itself against its own intentional torts. *Austro v. Niagara Mohawk Power Corp.,* 487 N.E.2d 267, 267 (N.Y. 1985) ("Indemnification agreements are unenforceable as violative of public policy . . . to the extent that they purport to indemnify a party for damages flowing from the intentional causation of injury."); *see also, e.g., St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply,* 409 F.3d 73, 86 (2d Cir. 2005) (noting that, under New York law, indemnity contracts are contrary to public policy if "they purport to indemnify a party for damages flowing from an injury that was intentional"); *Bank of N.Y. v. Neumann,* 628 N.Y.S.2d 675, 676 (1st Dep't 1995) ("[P]ublic policy does not permit indemnification for damages flowing from the intentional causation of injury."). As the New York Court of Appeals has explained:

> One who intentionally injures another may not be indemnified for any civil liability thus incurred. However, one whose intentional act causes an unintended injury may be so indemnified. . . . This is so because to allow such indemnity would be to violate the "fundamental principle that no one shall be permitted to take advantage of his own wrong".

*Pub. Serv. Mut. Ins. v. Goldfarb,* 425 N.E.2d 810, 814 (N.Y. 1981) (internal citations omitted). Thus, whether a contract explicitly or implicitly requires indemnification for intentional torts, that provision is unenforceable. "An agreement between two private parties, no matter how explicit, cannot change the public policy of this State." *Id.* (holding that insured could not be indemnified against punitive damages because "[s]uch damages are, as the name implies, a punishment for intentional wrongdoing").

Citrin cannot be contractually indemnified against damages for its intentional torts.

9

## 2. No Contractual Duty to Defend Intentional Torts

Citrin argues that, even if Barbagallo may not be required to indemnify it against *damages* resulting from intentional torts, he is nevertheless required to reimburse Citrin for its *defense* of those claims. *See* Citrin Opp. 7-9. This claim is without merit.

Under New York law, an insurer's duty to defend is broader than its duty to indemnify. *Ruder & Finn Inc. v. Seaboard Surety Co.*, 422 N.E.2d 518, 521 (N.Y. 1981) ("It is a well-established legal principle that the duty of an insurer to defend is broader than its duty to pay."). If "any of the claims against an insured arguably arise from covered events, the insurer is required to defend the entire action"; it is "immaterial that the complaint against the insured asserts additional claims which fall outside the policy's general coverage." *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 779 N.E.2d 167, 170 (N.Y. 2002) (internal citations and quotations omitted). Insurers may thus be required to defend against intentional torts that they cannot be required to indemnify. *See Pub. Serv. Mut. Ins. Co.*, 425 N.E.2d at 814-15.

Where, as here, the contractual indemnitor is not an insurer, the indemnitor's duty to defend is substantially narrower. In such cases, the indemnitor's "duty to defend its contractual indemnitee is no broader than its duty to indemnify." *Inner City Redevelopment Corp. v. Thyssenkrupp Elevator Corp.*, 913 N.Y.S.2d 29, 30 (1st Dep't 2010); *see also Bellefleur v. Newark Beth Israel Med. Ctr.*, 888 N.Y.S.2d 81, 84 (2d Dep't 2009).

Since Barbagallo is not an insurer, his duty to defend is coextensive with his duty to indemnify. *Inner City Redevelopment Corp.*, 913 N.Y.S.2d at 30. Because he did not enter into an enforceable contract to indemnify Citrin against damages from intentional torts, he cannot be obligated to defend that company against these claims. Permitting recovery for the defense of such claims would contradict the "fundamental principle that no one shall be permitted to take

10

advantage of his own wrong" by allowing it to avoid one of the costs imposed by intentional tort liability—i.e., the costs of defending itself against these claims. *Public Service Mut. Ins. Co.*, 425 N.E.2d at 814.

The language of the contract at issue in the instant case is not to the contrary. The agreement between Barbagallo and Citrin is broad, providing that:

> Barbagallo shall forever indemnify and hold [Citrin] harmless from and against *all* liability, costs or expenses (including attorney's fees and disbursement) on account of the foregoing representations being untrue or *any* claims made against [Citrin].

Citrin Am. Cross-Claim Ex. A (Admission Agreement) (emphasis added). Yet the clause does not state or imply that Barbagallo's duty to pay "costs or expenses (including attorney's fees and disbursement)" is broader than his duty to "hold [Citrin] harmless from and against . . . liability."

In support of its position, Citrin cites cases indicating that "[w]here there is a broad indemnity agreement providing for indemnification 'against all claims, actions, damages and costs,' the indemnitee is entitled to costs, including attorney's fees, incurred in defense of the primary action even where the action is dismissed." Citrin Opp. 7 (citing *Perchinsky v. State*, 660 N.Y.S.2d 177, 181 (3d Dep't 1997)); *see also* Citrin Opp. 8 ("'[T]he wording of the provision is broad enough to justify the conclusion that it covers expenses incurred in a successful defense, since the term "loss, damage or injury" is properly read as modifying, inter alia, claims and suits asserted [against the insured], and thus indicating that indemnification is triggered by suits in which the plaintiff claims "loss, damage or injury", whether or not the claim is upheld.'" (quoting *Luna v. American Airlines*, 769 F. Supp. 2d 231, 241 (S.D.N.Y. 2011)).

*Perchinsky* and *Luna* are inapposite. Citrin's claims for indemnification for intentional torts fail not because the company will lose the case on the merits, but because it may not contract out of the liability for these harms as a matter of public policy.

11

Barbagallo is not obligated to pay for the costs of defending Citrin against any of its intentional torts.

### 3. No Common Law Indemnification for Intentional Torts

Under New York law, "[i]n the absence of an express contractual agreement the courts recognized an implied contract of indemnity . . . in favor of the wrongdoer who has been guilty of passive negligence . . . against the one who has been actively negligent." *Rock v. Reed-Prentice Div. of Package Machinery Co.*, 346 N.E.2d 520, 522 (N.Y. 1976) (internal citations and quotations omitted; omissions in original).

> "In the classic indemnification case, '*the one seeking indemnity had committed no wrong,* but by virtue of some relationship with the tort-feasor or obligation imposed by law, was nevertheless held liable to the injured party.' " *Glaser v. Fortunoff of Westbury Corp.*, 71 N.Y.2d 643, 646, 529 N.Y.S.2d 59, 524 N.E.2d 413 (1988), quoting *D'Ambrosio v. City of New York,* 55 N.Y.2d 454, 461, 450 N.Y.S.2d 149, 435 N.E.2d 366 (1982). Common-law indemnity thus permits one who "is held liable solely on account of the negligence of another . . . to shift the entire liability to the one who was negligent." *D'Ambrosio,* 55 N.Y.2d at 462, 450 N.Y.S.2d 149, 435 N.E.2d 366 . . . .

*Miloscia v. B.R. Guest Holdings, LLC*, 928 N.Y.S.2d 905, 919 (N.Y. Sup. Ct. 2011) (citations and internal quotations omitted) (emphasis added).

When "the party seeking indemnification was himself partially at fault, the courts of [New York] State, and throughout the Nation generally, [have] refused to imply a right to . . . indemnification against another who played an effective role in causing the damage." *Rock,* 346 N.E.2d at 522 (internal citations and quotations omitted); *see also, e.g., Rosado v. Proctor & Schwartz, Inc.,* 484 N.E.2d 1354, 1356-57 (N.Y. 1985) (stating that a party seeking indemnification "must show that it may not be held responsible in any degree"); *Trustees of Columbia Univ. in City of N.Y. v. Mitchell/Giurgola Assocs.,* 492 N.Y.S.2d 371, 375 (1st Dep't

12

1985) ("[A] party who has itself actually participated to some degree in the wrongdoing cannot receive the benefit of the doctrine.").

New York law thus does not permit common law indemnification against intentional torts. *Campers' World Intern., Inc. v. Perry Ellis Intern., Inc.*, No. 02 CIV 453, 2002 WL 1870243, at *6 (S.D.N.Y. Aug. 13, 2002); *see also Miloscia*, 928 N.Y.S.2d at 919 (holding that there is no indemnification where "plaintiff alleges that [defendant] actually participated in the acts giving rise to his injuries, by [committing the intentional tort of discrimination]," as "[a]ny liability of [defendant] in this case would be based on its own wrongdoing").

Barbagallo is not obligated under common law to indemnify or defend against intentional torts of Citrin.

## B. Barbagallo Must Only Indemnify Citrin Against Dismissed Unjust Enrichment Claim

Marcum initially asserted four claims against Citrin: 1) tortious interference; 2) aiding and abetting breach of a fiduciary duty; 3) unfair competition; and 4) unjust enrichment. The unjust enrichment claim was dismissed by the court. Although Citrin claims that Marcum may seek to hold it vicariously liable for Barbagallo's acts, *see* Citrin Opp. to Barbagallo's Mot. to Dismiss Citrin's Am. Cross-Claim 9, Doc. Entry 69, Apr. 30, 2012, no such claim has been made by Marcum.

Citrin may be able to recover for any costs of defending itself against the dismissed unjust enrichment claim. Marcum's remaining claims against Citrin are intentional torts which cannot be indemnified against either by contract or common law.

### 1. Tortious Interference with Contract and Aiding and Abetting a Breach of a Fiduciary Duty Claims are Intentional Torts

Citrin does not dispute that the tortious interference and aiding and abetting a breach of a fiduciary duty claims are intentional torts. *See, e.g., Armstrong v. McAlpin,* 699 F.2d 79, 91 (2d Cir. 1983) (holding that aiding and abetting a breach of a fiduciary duty requires the aider and abettor to know that the primary wrongdoer is breaching and to provide substantial assistance in the primary wrong); *Lama Holding Co. v. Smith Barney Inc.,* 668 N.E.2d 1370, 1375 (N.Y. 1996) (holding that tortious interference with contract requires a showing of the "defendant's *intentional* procurement of the third-party's breach of the contract without justification" (emphasis added)); *Modular Devices, Inc. v. Alcatel Alenia Space Espana,* No. 08-CV-1441, 2010 WL 3236779, at *5 (E.D.N.Y. Aug. 12, 2010) ("Under New York law, tortious interference is an intentional tort."). Barbagallo is not required to indemnify or defend Citrin against these claims.

Citrin's causes of action for contractual and common law indemnification against the tortious interference and aiding and abetting a breach of a fiduciary duty claims are dismissed.

### 2. **Unfair Competition is an Intentional Tort**

Citrin claims that Marcum may seek to recover for negligent unfair competition. Such a claim is without basis in New York law. Unfair competition is an intentional tort for which contractual and common law indemnification is forbidden.

"[T]he essence of unfair competition under New York common law is the *bad faith* misappropriation of the labors and expenditures of another." *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (emphasis added) (internal citations and quotations omitted); *see also Saratoga Vichy Spring Co. v. Lehman,* 625 F.2d 1037, 1044 (2d Cir. 1980) ("The essence of an unfair competition claim under New York law is that the defendant has misappropriated the labors and expenditures of another. . . . Central to this notion

14

is some element of bad faith."); *Abe's Rooms, Inc. v. Space Hunters, Inc.,* 833 N.Y.S.2d 138, 140 (2d Dep't 2007) (requiring a showing of bad faith). Mere negligence or recklessness is insufficient. In order to establish bad faith, Marcum would have to show that Citrin acted "out of a dishonest purpose." *Kalisch–Jarcho Inc. v. City of New York,* 448 N.E.2d 413, 417 n.5 (N.Y. 1983) (defining bad faith in the context of a contract claim).

Because it must be shown that Citrin intentionally acted with a dishonest purpose to injure Marcum, the latter could not hold the former liable for negligent unfair competition. Such a cause of action is not recognized under New York law. Citrin cannot be indemnified by contract or common law against this intentional tort claim. *See Public Serv. Mut. Ins. Co.,* 425 N.E.2d at 814 ("One who intentionally injures another may not be indemnified for any civil liability thus incurred. However, one whose intentional act causes an unintended injury may be so indemnified.").

The claim for indemnification of damages flowing from unfair competition must be dismissed.

### 3. Citrin May Be Entitled to Indemnification for Unjust Enrichment

Unlike the other claims pled by Marcum against Citrin, unjust enrichment is not an intentional tort. It requires only a showing "1) that the defendant benefitted; 2) at the plaintiff's expense; and 3) that equity and good conscience require restitution." *Kaye v. Grossman,* 202 F.3d 611, 616 (2d Cir. 2000) (citation omitted). The remedy is available whether the defendant has obtained the money by wrongdoing, illegality, or mere mistake. *See, e.g., Parsa v. State of New York,* 474 N.E.2d 235, 237-38 (N.Y. 1984). A cause of action may lie even if the defendant did not intend to injure the plaintiff. *See, e.g., Corsello v. Verizon N.Y., Inc.,* 2012 WL 1032741 (N.Y. 2012) ("Typical [unjust enrichment] cases are those in which the defendant, though guilty

15

of no wrongdoing, has received money to which he or she is not entitled."). Contractual indemnification of such claims is not forbidden as a matter of public policy.

While Marcum's unjust enrichment claim has since been dismissed, expenditures were required to defend against this claim. Under the terms of Barbagallo's contract, he could be required to not only indemnify Citrin against this claim, but to pay for the costs of its defense.

In his reply papers, Barbagallo claims that he has effectively already paid Citrin for the cost of defending itself against the unjust enrichment claim. Barbagallo First Mot. Reply 6-8. He states that his attorney's drafted the motion to dismiss Marcum's claims, and that Citrin's attorneys made minimal revisions on the draft. *Id.* He argues that the $2,000 he has already paid more than compensates for this effort. *Id.*

While Barbagallo's evaluation may prove accurate, it raises issues of fact that are inappropriate for resolution in this motion. Citrin's claim for indemnification against the costs of defending the unjust enrichment claim stands.

## V.    Breach of Fiduciary Duty

Under New York law, "conduct amounting to breach of a contractual obligation may also constitute the breach of a duty arising out of the relationship created by contract which is nonetheless independent of such contract." *Bullmore v. Ernst & Young Cayman Islands,* 846 N.Y.S.2d 145, 148 (1st Dept 2007). Defendants who owe fiduciary duties to a plaintiff "may be subject to tort liability for failure to exercise reasonable care, irrespective of their contractual duties," since in "these instances, it is policy, not the parties' contract, that gives rise to a duty of care." *Sommer v. Federal Signal Corp.,* 593 N.E.2d 1365, 1369 (N.Y. 1992); *Meyers v. Waverly Fabrics, Div. of F. Schumacher & Co.,* 479 N.E.2d 236, 239 n.2 (N.Y. 1985) (internal citations and quotations omitted) ("[I]t is plain that a contracting party may be charged with a separate tort

16

liability arising from a breach of duty distinct from, or in addition to, the breach of contract . . . as when it springs from extraneous circumstances, not constituting elements of the contract as such although connected with and dependent upon it, and born of that wider range of legal duty which is due from every man to his fellow, to respect his rights of property and person, and refrain from invading them by force or fraud.").

Nevertheless, a "cause of action alleging breach of a fiduciary duty, which . . . is merely duplicative of a breach of contract claim, cannot stand." *See, e.g., Hylan Elec. Contr., Inc. v. MasTec N. Amer., Inc.*, 903 N.Y.S.2d 528, 530 (2d Dep't 2010). Where a defendant owes no duty to the plaintiff outside of that created by the contract, a breach of fiduciary duty claim will not lie. *See, e.g., id.* (noting that defendant was not a fiduciary of the plaintiff); *Bullmore,* 846 N.Y.S.2d at 148 (holding that breach of fiduciary duty claim could go forward, notwithstanding the similarity with the conduct constituting breach of contract, as defendants had an independent duty toward plaintiffs). Even if a defendant were in a position of trust with respect to the plaintiff, there is no breach of fiduciary duty claim when the complaint alleges a breach of a contractual, rather than fiduciary, duty. *See William Kaufman Organization, Ltd. v. Graham & James LLP*, 703 N.Y.S.2d 439, 442 (1st Dep't 2000) (holding that breach of fiduciary duty claim by former client against attorney was not independent of the contract where "the cause of action for breach of contract refers, at paragraph 60 of the complaint, to the unethical conduct described in paragraphs 53 and 54, which constitute the allegations of breach of fiduciary duty"); *see also Celle v. Barclays Bank P.L.C.*, 851 N.Y.S.2d 500, 501 (1st Dep't 2008) (holding that, where a contract "cover[s] the precise subject matter of the alleged fiduciary duty," then a claim for breach of fiduciary duty must be dismissed as duplicative (internal citations and quotations omitted)); *LaSalle Hotel Lessee, Inc. v. Marriott Hotel Services, Inc.*, 816 N.Y.S.2d 347, 348 (1st

17

Dep't 2006) (holding that "[t]he cause of action for breach of fiduciary duty . . . was . . . properly dismissed" because it was "based on the same allegations as for breach of contract"); *Pane v. Citibank, N.A.*, 797 N.Y.S.2d 76, 77 (1st Dep't 2005) (holding that defendant's actions cannot "be deemed a breach of fiduciary duty given a formal written agreement covering the precise subject matter of the alleged fiduciary duty").

In the instant case, even if Barbagallo owed Citrin a fiduciary duty of good faith and loyalty, Citrin has failed to allege sufficient facts to show that he did more than violate the duties he owed under the contract.

The duties of good faith and loyalty require a fiduciary to avoid self-dealing. They obligate a fiduciary to place the best interest of the beneficiary above his own self-interest. They do not protect beneficiaries from all forms of fiduciary misconduct.

Citrin claims Barbagallo breached his fiduciary duties by: 1) breaching his contract with Marcum, thereby prompting Marcum's suit against Citrin, Citrin Am. Cross-Claim ¶¶ 50-51; and 2) "refusing his duty to indemnify Citrin Cooperman," *id.* ¶ 52. The duties of good faith and loyalty do not require that a fiduciary avoid breaching a contract with a third party, where the fiduciary and not beneficiary is liable on the contract. Barbagallo owes these duties to Citrin solely on the basis of his employment contract, not because of any fiduciary obligations.

Citrin's cross-claim for breach of Barbagallo's fiduciary duty is duplicative of its cross-claim for Barbagallo's breach of contract. It is dismissed.

## VI.    Contribution

### A.    Generally

In its amended cross-claim, Citrin alleges that "[i]n the event that Barbagallo and Citrin Cooperman are both found liable to Marcum, Citrin Cooperman is entitled to contribution from

Barbagallo, pursuant to CPLR 1401-1403, for all or part of any amount, if any, for which Citrin Cooperman is held liable." *Id.* ¶ 57.

Unlike in indemnity, where the party held legally liable (but not actually culpable) shifts the entire loss to another who is blameworthy, "in contribution the loss is distributed among tort-feasors [who are all at fault], by requiring joint tort-feasors to pay a proportionate share of the loss." *Rosado v. Proctor & Schwartz, Inc.,* 484 N.E.2d 1354, 1356 (N.Y. 1985). Contribution thus "enables a joint tortfeasor that has paid more than its equitable share of damages to recover the excess from the other tortfeasors." *Sommer v. Federal Signal Corp.,* 593 N.E.2d 1365, 1372 (N.Y. 1992).

The New York contribution statute provides that:

> [T]wo or more persons who are subject to liability for damages for the same . . . injury to property . . . may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought.

N.Y. C.P.L.R. § 1401; *see also, e.g., Structure Tone, Inc. v. Univ. Servs. Grp., Ltd.,* 929 N.Y.S.2d 242, 245 (1st Dep't 2011). "The statute applies not only to joint tort-feasors, but also to concurrent, successive, independent, alternative, and *even intentional tort-feasors.*" *Bd. of Educ. of Hudson City Sch. Dist. v. Sargent, Webster, Crenshaw & Folley,* 517 N.E.2d 1360, 1364 (N.Y. 1987) (emphasis added). "A contribution claim can be made even when the contributor has no duty to the injured plaintiff . . . if there has been a breach of a duty that runs from the contributor to the defendant who has been held liable." *Raquet v. Braun,* 681 N.E.2d 404, 407 (N.Y. 1997).

The "critical requirement" for apportionment by contribution is that "the breach of duty by the contributing party must have had a part in causing or augmenting the injury for which contribution is sought." *Nassau Roofing & Sheet Metal Co. v. Facilities Dev. Corp.,* 523 N.E.2d

803, 805 (N.Y. 1988). Contribution is available "whether or not the culpable parties are allegedly liable for the injury under the same or different theories." *Id.*

Marcum seeks to hold both Barbagallo and Citrin liable for fundamentally the same injury—i.e., damage to Marcum's business relationships and good will resulting from the poaching of clients by Barbagallo. Barbagallo nevertheless argues that, because Marcum seeks to recover against Citrin for economic loss, Citrin cannot seek contribution for the claims in this case. He is mistaken.

### B. No Contribution for Economic Loss Resulting from Breach of Contract

"[S]ome form of tort liability is a prerequisite to application of the [New York contribution] statute." *Bd. of Educ. of Hudson City Sch. Dist.,* 517 N.E.2d at 1364. Parties may not seek contribution for purely economic loss resulting from a breach of contract, since this does not constitute "injury to property." *Id.* at 1364-65.

Where the plaintiff and the defendants are contractually related, a claim is properly considered a tort action only if the plaintiff alleges that the defendant violated a legal duty independent of that created by the contract. *See, e.g., Sommer,* 593 N.E.2d at 1371-75 (holding that alarm company could be held liable for contribution to building owner where complaint alleged gross negligence); *see also Hydro Investors, Inc. v. Trafalgar Power, Inc.,* 227 F.3d 8, 18 (2d Cir. 2000) (holding that contribution may lie for breach of contract actions in the "limited class of cases involving liability for the violation of a professional duty"). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract." *Clark–Fitzpatrick Inc. v. Long Is. R.R. Co.,* 516 N.E.2d 190, 194 (N.Y. 1987).

In deciding whether an action lies in contract or in tort, "the determining factor as to the

20

availability of contribution is not the theory behind the underlying claim but the measure of damages sought" by the plaintiff. *E.g., Rockefeller Univ. v Tishman Constr. Corp. of N.Y.,* 659 N.Y.S.2d 460, 463 (1st Dep't 1997), *lv. denied* 691 N.E.2d 630 (N.Y. 1997). An injury is properly characterized as "economic loss" when it goes to the "expectancy of the parties (loss of bargain)," such as "defects related to the quality of the product, e.g., product performance." *Hemming v. Certainteed Corp.,* 468 N.Y.S.2d 789, 790 (4th Dep't 1983); *see also Bellevue S. Assocs. v. HRH Constr. Corp.,* 579 N.E.2d 195, 200 (N.Y. 1991) (holding that damages constituted economic loss, and thus were not recoverable in tort, "where the bargained-for consideration has failed to meet the expectations of the purchaser"); *Grinnell v. G. Beames and Sons, Inc.,* 859 N.Y.S.2d 903 (table), 2008 WL 880299, at *2 (Cortland Cnty. Sup. Ct. 2008) ("[E]conomic loss" refers to the "benefit of the bargain" struck between two parties, that is, the product, service or result that one party sought to obtain from the other, pursuant to their contract. This category of damages encompasses losses stemming from poor product quality or performance, which "go to the expectancy of the parties."). "[W]here plaintiff is essentially seeking enforcement of the bargain," the action is considered one for breach of contract rather than tort, and no contribution is available. *Sommer,* 593 N.E.2d at 552; *see also, e.g., Bd. of Educ. of Hudson City Sch. Dist.,* 517 N.E.2d at 1364 ("We find nothing in the legislative history or the common-law evolution of the statute on which to base a conclusion that CPLR 1401 was intended to apply in respect to a pure breach of contract action such as would permit contribution between two contracting parties *whose only potential liability to the plaintiff is for the contractual benefit of the bargain.*" (emphasis added)); *Rockefeller Univ.,* 659 N.Y.S.2d at 463 (holding that contribution is barred where claims "seek the identical contractual benefit of the bargain, their tort language notwithstanding").

Barbagallo has cited no case holding that damages sought under tort theories should be considered "economic loss" and not "injury to property" for which contribution is available where, as here, no contractual relationship existed between the plaintiff (Marcum) and the defendant (Citrin). In one case, the Fourth Department indicated that the bar to recovery for economic loss might apply more broadly, stating that:

> Contribution may not be sought where the underlying action is for breach of contract *or where the damages sought are purely for economic loss* .... Here, the underlying action is based on breach of contract. However, *even if it was a tort action, contribution would not be available because the damages sought are limited to economic loss.*

*Livingston v. Klein*, 684 N.Y.S.2d 115, 116 (4th Dep't 1998) (emphasis added). At issue in *Livingston* was a claim for breach of contract. *Id.*

## C.    Contribution Permitted for Marcum's Monetary Loss Not Resulting from Breach of Contract

To the extent that Marcum's tortious interference with contract claim against Citrin seeks to recover the benefit of Marcum's bargains with Barbagallo and Glinski, this damage is properly characterized as economic loss. Barbagallo cannot be required to contribute to Citrin for this claim.

Barbagallo can be held liable in contribution for Marcum's aiding and abetting breach of a fiduciary duty and unfair competition claims. Citrin has a duty under common law to refrain both from unfair business tactics (unfair competition) and from interference with common law duties (aiding and abetting breach of a fiduciary duty). Its duty to act with reasonable care is not a function of a private contract with Marcum—none existed—nor of Marcum's contract with Barbagallo. The damages Marcum seeks to recover against Citrin under these claims are not for economic loss, but compensation for harms intentionally caused to Marcum's business

22

relationships and good will, including the diminished value of its confidential client lists. These damages can be considered "injury to property" for which N.Y. C.P.L.R. § 1401 would permit contribution.

Barbagallo's motion to dismiss Citrin's claim for contribution is denied.

## VII. Conclusion

Citrin's cross-claims for breach of fiduciary duty, and for contractual and common law indemnification of Marcum's causes of action for tortious interference, unfair competition, and aiding and abetting breach of a fiduciary duty, are dismissed. Barbagallo's motion to dismiss Citrin's claim for contribution of Marcum's tortious interference and aiding and abetting a breach of a fiduciary duty claims is denied. Barbagallo may also be required to reimburse Citrin for the costs of defending itself against Marcum's unjust enrichment claim.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Dated: May 9, 2012
     Brooklyn, New York